RECEIVED
IN ALEXANDRIA, LA

AUG 12 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

ANGELA DENISE SMITH

VERSUS

MICHAEL ASTRUE, COMMISSIONER
OF SOCIAL SECURITY

CIVIL ACTION NO. 09-cv-1135

JUDGE JAMES T. TRIMBLE, JR.
MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION

Angela Denise Smith ("Smith") filed a Title XVI application for Social Security Income ("SSI") on or about January 31, 2007 (R. 101-103). The claim was initially denied on June 14, 2007 and Smith timely filed a request for hearing before an Administrative Law Judge ("ALJ") (R. 69-76). The ALJ held a hearing on October 27, 2008 (R. 20-68) and issued an unfavorable decision on January 13, 2009 (R. 8-19). Smith sought review by the Appeals Council but review was denied on May 28, 2009 (R. 1-3). Accordingly, the decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Smith filed the instant action seeking judicial review of the Commissioner's decision.

To qualify for SSI under Title XVI of the Social Security Act, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. §1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must

demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. §1382(a)(3).

## Summary of Pertinent Facts

Smith, her attorney, and Vocational Expert, Wendy P. Klamm, attended the hearing on October 27, 2008 (R. 22). At the time of the hearing, Smith was 37 years old, was 5 feet, 6 inches tall and weighted between 335 and 340 pounds (R. 27, 31).

Smith testified regarding her many impairments which included sleep apnea, insomnia, shortness of breath, carpal tunnel, a right shoulder ailment, acid reflux, anemia, depression, high blood pressure, gout and an enlarged heart.

She advised she was diagnosed with sleep apnea after numerous sleep studies and used a sleep apnea machine at night (R. 36-37). She suffered from insomnia and took Ambien-CR to help her fall asleep (R. 37). The medicine caused her to feel sleepy and groggy in the morning and she was unable to wake up until ten or eleven o'clock (R. 37).

When asked about her pain, Smith advised she experienced pain in her left hand due to carpal tunnel and in her right shoulder. (R. 39). She wore a brace to help with her carpal tunnel and was

2

able to pick up coins, pens and paperclips (R. 50). She complained her shoulder ailment prevented her from raising her arm over her head despite her taking Celebrex and arthritis medicine (R. 47).

Smith also suffered from gout and which prevented her from walking long distances and sitting too long (R. 40). She stated she could stand fifteen to thirty minutes at a time, walk less than a mile, sit two to three hours and lift a gallon of milk (R. 34, 47).

Smith was under the care of Naseem A. Jaffrani, M.D. due to her high blood pressure and chest pain. She underwent a heart catheterization in the year prior to the hearing and was diagnosed with having an enlarged heart (R. 42).

Smith testified she no longer worked because she was groggy had trouble waking up in the morning (R. 45). Despite her ailments, Smith could drive, grocery shop, do some household chores, attend doctors' appointments, handle her finances, attend church and attend her children's school functions and meetings (R. 45, 47, 51, 52).

The VE testified that jobs existed in significant numbers in the national economy for someone of the same age, education and vocational background and who could only perform the physical exertional requirements of sedentary work, only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, could never climb ropes, ladders or scaffolds, could not work above

shoulder level, could make only simple work-related decisions, deal with only occasional changes in work process or environment and have superficial contact with non-supervisory co-workers (R. 54-55). Specifically, the jobs of addresser, press clippings trimmer and/or table worker (R. 55).

The ALJ questioned if the occupational base would change if the person had to work in a controlled environment where he or she could not be exposed to pulmonary irritants (R. 56). The VE initially said the limitation would not have any impact on the occupational base because these were indoor jobs. However, she later conceded, during cross examination by Smith's attorney, that the job of table worker would not be appropriate as there would likely be exposure to pulmonary irritants (R. 56, 61-62).

The ALJ also asked the VE whether the occupational base would be impacted for someone who had to shift positions every thirty minutes from sitting to standing and the VE stated she did not believe the modification would have an impact (R. 56).

During the cross examination of the VE, Smith's attorney questioned whether someone who could not use their left hand due to pain would be able to perform the jobs of addresser and press clippings trimmer and the VE acknowledged that they would have difficulty and probably could not perform those jobs (R. 62).

The ALJ found Smith was a younger individual with a high school education who could communicate in English (R. 18). She had

4

not engaged in substantial gainful activity since the application date, January 29, 2007 (R. 13). Her severe impairments included: obesity, coronary artery disease, hypertension, gout, migraine headaches, left carpal tunnel syndrome, sleep apnea and depressive disorder but none of those impairments, either alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 13).

The ALJ found Smith had the residual functional capacity ("RFC") to perform a modified range of sedentary work (R. 15). The modifications placed on Smith's ability to perform sedentary work included the occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling as well as occasional contact with the general public(R. 15). She could not climb ropes, ladders or scaffolds, use her left dominant arm for gross manipulation or work in conjunction or in close proximity to non-supervisory coworkers (R. 15). She could make simple, work related decisions and deal with occasional changes in work processes and environment and she had to work in a controlled environment with no exposure to gasses, dust or other respiratory irritants. Smith had to be able to shift from sitting at least every thirty minutes to standing or walking for less than five minutes (R.15). Thus, she was not able to perform her past relevant work as a home health aide as that was semi-skilled work with medium exertional demands (R. 17).

The ALJ found Smith could perform jobs that existed in significant numbers in the national economy: addresser and press clipper and table worker (R. 17). Accordingly, he found Smith was not under a disability as defined in the Social Security Act since her application was filed (R. 19).

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion. It must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th cir. 1983).

The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. However, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340, 343-344 (5th Cir. 1988); citing, Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983). Also, Dellolio, 705 F.2d at 125.

### Issues

Smith raises the following issue for appellate review:

> Whether the ALJ erred in assessing her residual functional capacity, resulting in a failure to sustain his burden at Step 5.

Smith first argues the ALJ's statement that she failed to demonstrate "medical findings sufficient to establish disability on a purely medical basis" is flawed. Smith contends the ALJ should have obtained an updated opinion on the issue of medical equivalence and that he failed to consider her extreme obesity in combination with her other impairments.

It is well established that the claimant bears the burden of proving her condition meets or equals an impairment listed in

7

Appendix 1. <u>Sullivan v. Zebley</u>, 493 U.S. 521, 110 S.Ct. 885, 891-92, 107 L. Ed. 2d 967 (1990). Also, <u>Selders v. Sullivan</u>, 914 F. 2d 614, 619(5th Cir. 1990). Smith provided approximately 200 pages of medical records and in those records there are numerous physicians notes regarding weight, a diagnosis of obesity and a need to lose weight. However, the record is devoid of any evidence that Smith attempted to lose weight, sought help to lose weight or had a problem losing weight. A medical condition that can reasonably be remedied by treatment is not disabling. <u>Lovelace v. Bowen</u>, 813 F.2d 55, 59 (5th Cir. 1987). Also, <u>Johnson v. Bowen</u>, 864 F.2d 340, 348 (5th Cir. 1988); 20 C.F.R. §§404.1530, 416.930.

Smith also fails to point to a Listing which is met or medically equaled due to her obesity and the combined effect on her other severe impairments. Further, despite the considerable medical evidence, there is not a single entry or report advising her obesity imposed additional limitations on her medically diagnosed impairments. Smith's argument amounts simply to speculation that her obesity could exacerbate her cardiac, respiratory or mental problems and is without merit.

Smith also argues the ALJ erred in relying upon the non-treating physician report and in support cites <u>Johnson v. Harris</u>, 612 F.2d 993 (5th Cir. 1980). Smith cites <u>Johnson v Harris</u> for the proposition that "the reports of physicians who did not examine the claimant, taken alone, 'would not be substantial evidence on which

8

to base an administrative decision.'" (Doc. Item 8 at 5-6 *citing* Johnson, 612 F.2d at 998). This finding does not apply in the instant case as the ALJ relied upon other evidence in the record to support his finding.[1]

With respect to Smith's argument that the ALJ failed to fully develop the record because he did not obtain an opinion from a treating or consulting physician, it is worth noting the failure of the ALJ to develop an adequate record is not ground for reversal per se. As in the case of a hearing held without waiver of the right to counsel, the claimant must show that he was prejudiced as a result of a scanty hearing. He must show that, had the ALJ done his duty, he could and would have adduced evidence that might have altered the result. Kane v. Heckler, 731 F.2d 1216, 1219-20 (5th Cir. 1984), and cases cited therein. Also, Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991); Brock v. Chater, 84 F.3d 726 (5th Cir. 1996); Carey v. Apfel, 230 F.3d 131 (5th Cir. 2000).

Smith does not cite any evidence which would have resulted in the issuance of a different finding. Rather, she again speculates what might have been found. Without a showing of prejudice, the ALJ's decision shall not be reversed. Carey, 230 F.3d at 142

---

[1] In Johnson v. Harris, the Fifth Circuit found the ALJ's questioning of the Vocational Expert to be flawed and that medical evidence did not support his finding. Therefore, the single piece of evidence upon which he relied was the report of a non-treating, non-examining physician. The Court found this could not be the sole basis upon which an administrative decision is based.

citing, <u>Brock</u>, 84 F.3d at 728 and <u>Kane</u>, 731 F.2d at 1220.

Smith's contention that the ALJ failed to take into account limitations from her coronary artery disease, hypertension, migraine headaches, sleep apnea, depression and work stress, is also without merit. The ALJ found Smith possessed the RFC to perform a modified range of sedentary work. He then limited her mobility, her ability to work with others, make decision, and her exposure to environmental pollutants. This necessarily includes her limitations due to her severe impairments; thus, the contention is without merit.

Also without merit is Smith's contention that the ALJ failed to consider the side effects from her medications. The ALJ made note of the only noted side effect from medication, that she is groggy and sleepy in the morning. Ultimately, he determined that her statements regarding the intensity, persistence and limiting effects of her symptoms are credible only to the extent they are consistent with medical evidence and there are no complaints in the medical evidence regarding side effects from medications.

Smith's contention the VE's testimony cannot support the ALJ's finding regarding her RFC is also without merit. While Smith states her need to walk away from her work station was not included in the hypothet posed to the ALJ, the record reveals otherwise.

> ALJ: Okay. Further, then if this hypothetical individual, because these are all sedentary jobs, so presumably they are seated for the majority of the work day. But if the

10

> individual had to be able to shift positions from sitting, say at least every 30 minutes, but they would not be standing more than 5 minutes at any one time, would that have any impact on the occupational base?

(R. 56).

Finally, Smith argues that she rebutted the ALJ's determinations she could perform the work of an addresser and/or press clippings trimmer. She notes the VE's testimony during cross examination in which the VE acknowledged a person who could not use their arm due to pain would have difficulty performing such work. While the VE did concede a person who could not use both hands would not be able to perform the tasks associated with these jobs, Smith did not prove she is unable to use her left hand due to carpal tunnel. In fact, her testimony was that she is able to pick up pens, coins and paperclips. Accordingly, this argument too lacks merit.

## Conclusion

Accordingly, IT IS RECOMMENDED that Smith's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provision of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. A party may respond to another party's objections within **fourteen**

**(14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN (14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 12th day of August 2010.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE